UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jamie L. Smith,

    Plaintiff,

    v.

Spinnaker Insurance Company,

    Defendant.

Case No. 1:23cv463

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court upon Plaintiff's Motion for Partial Summary Judgment – Breach of Contract. (Doc. 27). Defendant opposes Plaintiff's Motion. (Doc. 36). Also before the Court is Defendant's Motion for Summary Judgment. (Doc. 33). Plaintiff opposes Defendant's Motion. (Doc. 37).

### I.    BACKGROUND

This case arises out of an insurance claim for fire damage to Plaintiff's property at 7347 Bernard Avenue, Cincinnati, Ohio. Plaintiff brings claims for breach of contract and bad faith. Defendant maintains that the damage is not covered because Plaintiff was not living in the home at the time of the loss. Plaintiff responds that he was only temporarily living in Michigan so he could care for his ailing father. Plaintiff claims that Defendant acted in bad faith when it failed to conduct an investigation in a reasonable amount of time; and failed to indemnify him for the loss without reasonable justification.

Plaintiff has filed for summary judgment on his breach of contract claim. (Doc. 27). Defendant seeks summary judgment on Plaintiff's breach of contract and bad faith claim. (Doc. 33).

## II. ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

This standard of review remains the same for reviewing cross-motions for summary judgment. *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 441-42 (6th Cir. 2021) (citing *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013); *see also Harris v. City of Saginaw, Michigan*, No. 22-1504, 2023 WL 2569495, at *3 (6th Cir. Mar. 20, 2023) ("The district court correctly emphasized the hat switch courts perform when evaluating cross motions for summary judgment: In review of the *defendant's* motion, we accept the *plaintiff's* view of the facts as true and draw all reasonable inferences in favor of the *plaintiff*; in review of the *plaintiff's* motion, we accept the *defendant's* view of the facts as true and draw all reasonable inferences in favor of the *defendant*.") (emphasis in original).

### B. Breach of contract

Plaintiff claims Defendant breached two provisions of the insurance contract between the parties. The first provision provides for coverage for damage to the

2

dwelling; and the second provision provides for living expenses resulting from loss of use of the dwelling.  The parties appear to agree that Ohio law applies to Plaintiff's breach of contract claim.

Under Ohio law, "[a]n insurance policy is a contract and must be interpreted by utilizing 'the familiar rules of construction and interpretation applicable to contracts generally.'" *Carpenter v. Liberty Ins. Corp.*, 413 F. Supp. 3d 727, 731–32 (S.D. Ohio 2019) (quoting *Whitt Mach., Inc. v. Essex Ins. Co.*, 377 Fed. App'x 492, 496 (6th Cir. 2010) (citing Ohio law).

With regard to coverage for the damage to the dwelling, the term in dispute in this case is "residence."  Under the terms of the insurance contract between the parties, the "insured location" is the "residence premises."  (Doc. 25, PAGEID 395).  The insurance contract defines "residence premises" as:

> a. The one-family dwelling where you reside;
>
> b. The two-, three- or four-family dwelling where you reside in at least one of the family units; or
>
> c. That part of any other "building" where you reside; and which is shown as the "residence premises" in the Declarations.
>
> "Residence premises" also includes other structures and grounds at that location.

(Doc. 25, PAGEID 396).  The "insured location" also includes "[a]ny part of a premises, not used for 'business' purposes . . . [w]here an 'insured' is 'temporarily residing.'" (Doc. 25, PAGEID 395).  "Temporarily Residing" means "residence in a hotel, motel, vacation residence or similar facility. It does not include any residence that an 'insured' has occupied, rented or leased for 60 days or longer, or that an 'insured' intended to occupy

3

for 60 days or longer." The terms "residence, "reside" and "residing" are not specifically defined in the insurance policy.

Ohio courts have found the term "residing" to be ambiguous where the terms "reside," "resident," and "residence" are not defined in the insurance policy. *Nationwide Prop. Cas. Ins. Co. v. Kavanaugh*, 2013 WL 5770738, *3 (Ohio Ct. App. Oct. 25, 2013).[1] As one Ohio court has explained:

> We have previously held that when left undefined in an insurance contract, the term "residing" is an ambiguous term. *Hicks v. Mennonite Mutual Insurance Co.*, 2d Dist. Miami No. 10–CA–17, 2011–Ohio–499. "[T]he word 'residing' is an ambiguous, elastic, or relative term, and includes a very temporary, as well as a permanent abode[.] * * * [T]he words 'resident,' 'residence' and 'residing' have no precise, technical and fixed meaning applicable to all cases. 'Residence' has many shades of

---

[1] In *Nationwide Prop. Cas. Ins. Co. v. Kavanaugh*, the insurance policy included language similar to the policy in this case:

> The coverage under the policy for a dwelling is limited to "the dwelling on the residence premises used mainly as your private residence ..." Complaint, Exh. A (Policy), pg. B1. The coverage for personal property is limited to "personal property owned or used by an insured at the residence premises." Id. "Insured" is defined as "you and the following residents of your household at the residence premises: A) your relatives; B) any other person under the age of 21 in the care of you or your relatives." Id. at A1. "You" is defined as "the named insured shown in this policy who resides at the resident premises." Id. "Residence premises" is defined as the "one, two, three or four-family dwelling, other structures and grounds located at the mailing address shown on the Declarations unless otherwise indicated." Id. We note that the terms "reside," "resident," and "residence" are not defined in the policy.

2013 WL 5770738, *3 (Ohio Ct. App. Oct. 25, 2013). However, in a case cited by Defendant, a federal district court applying Ohio law held: "Although the term 'residence' may be ambiguous in other contexts, there is no ambiguity where, as here, specific language clearly defines the term." *Riley v. Liberty Ins. Corp.*, No. 3:17 CV 1595, 2019 WL 2567723, at *2 (N.D. Ohio June 21, 2019). The policy in *Riley* included language similar to the policy in this case: "'Residence premises' means . . .The one family dwelling . . . where you reside and which is shown as the 'residence premises' in the Declarations." *Id*. at *2. It is important to note that the *Riley* case was before the court following a bench trial. Moreover, the *Riley* court applied the same analysis employed by Ohio courts after finding the term "residence" ambiguous. That is, the *Riley* court reviewed the same categories of evidence which Ohio courts use when determining whether the plaintiff resided in the home: the address on his driver's license, how often Plaintiff was at the house, what furniture was in the house and whether the utilities for the house were in use., *Id*. at **2-9.

4

> meaning, from mere temporary presence to the most permanent abode. It is difficult to give an exact or even satisfactory definition of the term 'resident,' as the term is flexible, elastic, slippery and somewhat ambiguous. * * * Definitions of 'residence' include 'a place of abode for more than a temporary period of time' and 'a permanent and established home' and the definitions range between these two extremes.

*Id*.; *see also Esurance Prop. & Cas. Ins. Co. v. Kyle*, No. 5:19-CV-02849, 2022 WL 9993733, at *6 (N.D. Ohio Oct. 17, 2022) (noting that Black's Law Dictionary defines residence as "[th]e act or fact of living in a given place for some time" and "[t]he place where one actually lives, as distinguished from a domicile;" but that "[a] person ... may have more than one residence at a time but only one domicile.") (quoting Residence, Black's Law Dictionary (11th ed. 2019)). As a result, Ohio courts have ruled that the terms "reside," "resident," and "residence" should be given "the broadest construction and that all who may be included, by any reasonable construction of such terms, within the coverage of an insurance policy using such terms, should be given its protection." *Nationwide Prop. Cas. Ins. Co. v. Kavanaugh*, 2013 WL 5770738, *3.

Ohio courts have explained that "[t]he fact pattern of a particular case plays a significant role in determining whether an individual is a resident of a household." *Entenman v. Auto-Owners Ins. Co.*, 136 Ohio App. 3d 541, 549, 737 N.E.2d 119, 124 (Ohio Ct. App. 2000) (citing *Prudential Property & Cas. Co. v. Koby*, 124 Ohio App.3d at 178–179, 705 N.E.2d 748, 750-751 (Ohio Ct. App. 1997)). Therefore, determining residence is a fact-intensive inquiry in which Ohio courts consider:

> whether utilities are active at the property; whether the insured person maintains a regular presence at the property; whether the property is the address on the insured individual's bank statements, license, and other accounts; whether the insured person is registered to vote in the State where the property is located; where the insured person pays taxes; whether the insured person kept personal items and mementos at the property; whether someone other than the insured is living at the property

5

and the insured's relationship to that person; and the insured person's intent to remain elsewhere.

*Esurance Prop. & Cas. Ins. Co. v. Kyle*, No. 5:19-CV-02849, 2022 WL 9993733, at *6 (N.D. Ohio Oct. 17, 2022) (citations omitted); *see also Entenman v. Auto-Owners Ins. Co.*, 136 Ohio App. 3d 541, 549, 737 N.E.2d 119, 124 (Ohio Ct. App. 2000) ("Ohio courts usually examine several factors including 'the amount of time the person spends at the household, the person's age, the person's intent, and whether the insured is 'legally obligated' to the person.'").  For this reason, an unpublished decision of this Court, cited by Defendant, is easily distinguishable.  As this Court noted in that case: "There is [ ] no dispute that Spangler did not live at the property at the time of the loss." *Spangler v. Wenninger*, No. 1:06CV229, 2008 WL 4218580, at *6 (S.D. Ohio Sept. 9, 2008).

Instead, the Court finds that this case is similar to the set of facts found in *Esurance Prop. & Cas. Ins. Co. v. Kyle*, No. 5:19-CV-02849, 2022 WL 9993733 (N.D. Ohio Oct. 17, 2022).  Like the plaintiff in *Esurance*, there is no dispute regarding Plaintiff's location between April 10, 2022—when he left for Michigan—and the date of the fire—January 1, 2023.  Instead, like the parties in *Esurance*, the parties in this case draw opposing inferences from the facts in the record and dispute Plaintiff's intent when he went to Michigan.

Plaintiff testified in his deposition that he left for Michigan to help his father who had recently undergone back surgery.  (Doc. 23, PAGEID 103).  When Plaintiff left, he locked the house and turned off all the utilities.  (Doc. 23, PAGEID 116).  Plaintiff brought three suitcases of clothes with him.  (Doc. 23, PAGEID 108).  Plaintiff testified that he intended to return from Michigan when his father was able to do things for

6

himself. (Doc. 23, PAGEID 108). At the time, Plaintiff had been laid off and did not have steady employment. (Doc. 23, PAGEID 111). Plaintiff stayed with his father until May of 2023. (Doc. 23, PAGEID 96-97). Plaintiff paid his father $400 in rent each month. (Doc. 23, PAGEID 97).

In May of 2022, Plaintiff applied for Medicaid benefits through the State of Michigan and obtained a Michigan identification card. (Doc. 23, PAGEID 114-115). Plaintiff found full-time employment a few months after he arrived in Michigan and is currently employed as a laborer for a company in Michigan. (Doc. 23, PAGEID 92). After he moved out of his father's house, Plaintiff rented his own house in Michigan. (Doc. 23, PAGEID 94-95).

Plaintiff has not returned to the house on Bernard Avenue since he left Ohio for Michigan in April of 2022. (Doc. 23, PAGEID 92). Plaintiff did not rent the property to anyone after he left. (Doc. 23, PAGEID 116). However, in May of 2022, Plaintiff learned that there were "squatters" living in the house. (Doc. 23, PAGEID 141). Plaintiff gave Kimberly Sipe—an acquaintance—power of attorney to evict the squatters. (Doc. 23, PAGEID 116). Sipe informed him that the house was destroyed and things had been stolen from the house, including the new appliances. (Doc. 23, PAGEID 160-161). Plaintiff testified that he was unable to return to the house because the squatters remained there. (Doc. 23, PAGEID 158).[2] Plaintiff testified that he did not have family

---

[2]Plaintiff was asked if he had made arrangements with his brother or father to take him back to Ohio. (Doc. 23, PAGEID 176). Plaintiff testified:

> Yeah, initially that was the plan was definitely to go back after they didn't no longer need me up here [in Michigan]. That's kind of how I found out that the squatters were there, you know, I was getting them to check on the house to find out, make sure it was okay and all the information about the squatters came out.

7

or friends who could help him with the situation. (Doc. 23, PAGEID 162). Plaintiff was unable to get in touch with Sipe for several months, and he later learned that she had been incarcerated. (Doc. 23, PAGEID 151, 155-156). Plaintiff assumed the squatters remained in the house until the date of the fire. (Doc. 23, PAGEID 156). Plaintiff has not made a mortgage payment on the house since he was laid off from work in October of 2021. (Doc. 23, PAGEID 113). However, he was granted a forbearance due to the COVID pandemic and has been working with the mortgage company to avoid them proceeding with the foreclosure complaint they filed in August of 2022. (Doc. 23, PAGEID 112-113). Plaintiff explained that he would like to return to the house because he left personal effects there which do not have value to anyone else, including the ashes of his girlfriend's mother. (Doc. 23, PAGEID 159).

Accepting Plaintiff's view of the facts as true and draw all reasonable inferences in favor of the Plaintiff, these facts permit a finding for purposes of summary judgment that Plaintiff maintained the Bernard Avenue property as his residence. Plaintiff kept personal items at the property and intended to return to Ohio. Plaintiff explains he would have returned after a few months if it had not been for the squatters living in the house. Even though Plaintiff was not making mortgage payments, he was working with is lender to keep the property out of foreclosure. However, in reviewing Plaintiff's motion, and accepting Defendant's view of the facts as true and draw all reasonable inferences in favor of Defendant, the Court concludes that there is a genuine issue of material fact regarding Plaintiff's "residence" at the time of the fire. Therefore, as to the claim for damage to the dwelling, Plaintiff's Motion for Partial Summary Judgment –

---

(Doc. 23, PAGEID 176).

Breach of Contract (Doc. 27) is DENIED; and Defendant's Motion for Summary Judgment (Doc. 33) is DENIED.

The Court now turns to Plaintiff's claim that Defendant breached the provision which provides for living expenses resulting from loss of use of the dwelling. This provision provides:

> Additional Living Expense
>
> If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. . . .
>
> Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

(Doc. 25, PAGEID 399). Defendant maintains that this coverage does not apply because Plaintiff was not residing at Bernard Avenue property at the time of the loss. However, because the Court has found that there is a genuine issue of material fact regarding Plaintiff's "residence" at the time of the fire, neither party is entitled to summary judgment on this claim.

Therefore, as to the claim for living expenses under the policy, Plaintiff's Motion for Partial Summary Judgment – Breach of Contract (Doc. 27) is DENIED; and Defendant's Motion for Summary Judgment (Doc. 33) is DENIED.

### C. Bad faith

The parties appear to agree that Ohio law applies to Plaintiff's bad faith claim. In Ohio, "an insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315, 1319 (Ohio 1983). An insurer "fails to exercise good faith in the processing of a

claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397, 400 (Ohio 1994) (citation omitted). "A bad faith claim, if proven, allows for recovery of extracontractual damages." *LeForge v. Nationwide Mut. Fire Ins. Co.*, 82 Ohio App. 3d 692, 700, 612 N.E.2d 1318, 1323 (Ohio Ct. App. 1992) (citing *Asmaro v. Jefferson Ins. Co. of New York*, 62 Ohio App.3d 110, 118, 574 N.E.2d 1118, 1123 (Ohio Ct. App. 1989)). "These are damages over and above those covered by the insurance contract sustained by the insured as a consequence of the insurer's bad faith." *Id*. at 1323-24. Therefore, "[w]hether an insurer is liable for bad faith is not dependent on whether the insurer breached the insurance contract." *Bonasera v. New River Elec. Corp.*, 518 F. Supp. 3d 1136, 1146 (S.D. Ohio 2021) (citing *Valley Force Ins. Co. v. Fisher Klosterman, Inc.*, No. 1:14-CV-792, 2016 WL 1642961, at *3 (S.D. Ohio Apr. 26, 2016)).

"Summary judgment in favor of the insurer is appropriate where, viewing the evidence in the light most favorable to the insured, the claim was fairly debatable and the refusal was premised on the status of the law at the time or the facts that gave rise to the claim." *Zoppo*, 644 N.E.2d at 400. "[A]n insured must oppose such a motion with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer either had actual knowledge of that fact or intentionally failed to determine whether there was any reasonable justification for refusing the claim." *Tokles v. Midwestern Indemnity Co.*, 65 Ohio St.3d 621, 630, 605 N.E.2d 936, 943 (Ohio 1992).

Plaintiff's bad faith claim is based on delay. However, "delay alone is insufficient

10

to establish bad faith."  *Paragon Molding, Ltd. v. Safeco Ins. Co.*, No. 3:05-CV-422, 2013 WL 6055403, at *9 (S.D. Ohio Nov. 15, 2013).  Instead, "[t]o recover on a bad faith claim relating to delay, the plaintiff must prove that the claim was 'unreasonably delayed and the insurer had no justification for such ... delay.'" *Id*. (quoting *Price v. Dillon*, 2008 WL 698944, *5 (Ohio Ct. App. Mar. 13, 2008)).

Plaintiff explains that Defendant sent a single Reservation of Rights letter on February 8, 2023, which explained:

> Although our investigation is not yet complete, we have determined that coverage may not be in order for the following reasons: our investigation is discovering the insured premises may be used as a rental property and may not be your primary residence.

(Doc. 26, PAGEID 430-434).  Plaintiff maintains that no further investigation was ever conducted.  However, there is evidence in the record that after the initial investigation raised some red flags, Defendant retained VRC Investigations to assist in the investigation by obtaining documents and interviewing witnesses. (Doc. 30, PAGEID 524, Lee Schiff Aff., ¶ 8).  Defendant also hired EFI Global to conduct an origin and cause investigation of the fire.  (Doc. 30, PAGEID 524, Lee Schiff Aff., ¶ 7).  Defendant conducted interviews and continued its investigation in March and April of 2023.  (Doc. 30, PAGEID 524, Lee Schiff Aff., ¶¶ 15-17).  However, Defendant was not able to interview several of the witnesses—including the couple who were said to be "squatting" in the home—because Defendant did not have contact information for the witnesses, or the witnesses did not respond to the investigator's calls.  (Doc. 30, PAGEID 524, Lee Schiff Aff., ¶¶ 9, 21).  Similarly, after her initial cooperation, Kimberly Sipe failed to respond to Defendant's requests for additional information.  (Doc. 30, PAGEID 524, Lee Schiff Aff., ¶¶ 19-20).  In May of 2023, Defendant received a letter of representation

11

from Plaintiff's attorney; and then this lawsuit was filed in June of 2023. (Doc. 30, PAGEID 524, Lee Schiff Aff., ¶¶ 19-20).

Construing the evidence in the light most favorable to Defendant, the Court concludes that there is sufficient evidence that Defendant's investigation was not unreasonably delayed. Defendant conducted the investigation over a period of less than six months. The investigation proved to be difficult given that contact information for the witnesses was not available and several of the witnesses were not responsive to requests for information. Plaintiff has not presented any evidence which would indicate that the delay stemmed from Defendant's bad faith in handling the claim. *Accord Price*, 2008 WL 698944, at *5 ("A seven-month delay in paying an insurance claim, without more, is not evidence of bad faith."). Therefore, Defendant's Motion for Summary Judgment (Doc. 33) as to Plaintiff's bad faith claim is GRANTED.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiff's Motion for Partial Summary Judgment – Breach of Contract. (Doc. 27) is **DENIED**; and

2. Defendant's Motion for Summary Judgment (Doc. 33) is **DENIED in PART** and **GRANTED in PART**.

**IT IS SO ORDERED.**

                                                 */s/ Michael R. Barrett*
                                                 JUDGE MICHAEL R. BARRETT